IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Andrew Nicholas Godliman, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-11681-SAL |
| | ) | |
| v. | ) | |
| | ) | |
| Companion Life Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1.      Plaintiff ANDREW NICHOLAS GODLIMAN, hereinafter referred to as "Plaintiff," brings this ERISA action against the COMPANION LIFE INSURANCE COMPANY Group Welfare Benefits Plan, in its capacity as Administrator of the Blue Cross/Blue Shield of South Carolina (Blue Cross/Blue Shield) Long Term Disability Plan, hereinafter referred to as "Defendant." Plaintiff brings this action to secure all disability benefits, whether they be described as short-term, long-term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of his employment with Blue Cross/Blue Shield.

### PARTIES

2.      Plaintiff is a citizen and resident of Myrtle Beach, South Carolina.

3.      Defendant is a properly organized business entity doing business in the State of South Carolina.

4.      The disability plan at issue in the case at bar was funded and administered by

Defendant.

5. Defendant is a business entity doing business in the District of South Carolina. Defendant may be served with process by serving its registered agent, Duncan S. McIntosh, I-20 at Alpine Road, AA-270, Columbia, South Carolina, 29219.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the District of South Carolina is proper by virtue of Defendant doing business in the District of South Carolina. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id*.) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*).* See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded whether a defendant "resides or may

be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the District of South Carolina, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. 380-25-00299-000.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Blue Cros/Blue Shield, with coverage beginning on January 1, 2006.

10. Said policy became effective January 1, 2006.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. 380-25-00299-000 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.    Plaintiff contends the Plan fails to properly give Defendant discretion under the Policy.

23.    Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.    When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in the claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.    Defendant committed the following violations demonstrating its failure to furnish a full and fair review:

   i.    Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
   ii.   Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
   iii.  Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
   iv.   Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
   v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
   vi.   Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
   vii.  Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
   viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
   ix.   Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

    x.    Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

    xi.    Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

    xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

    xiii.    Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26.    Defendant's violations of the regulations were not inadvertent or harmless.

27.    Plaintiff contends, because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28.    Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

29.    Plaintiff is a 63-year-old man previously employed by Blue Cross/Blue Shield as a "Senior Technical Team Lead."

30.    Senior Technical Team Lead is classified under the Dictionary of Occupational Titles as a "Technical Support Specialist" (D.O.T. 033.162-018) or "Technical Support Supervisor" (D.O.T. 169.137-002). The role has a light exertional level. This occupation also has an SVP of 8 and is skilled work.

31.    This occupation was very demanding in that it required Plaintiff to, *inter alia*, oversee a team of 16 technicians and manage projects; upon approval of a project, assemble a qualified team to support the work request; monitor work progress, ensuring timely delivery of a project; identify and escalate any issues that may have a negative impact on a project; maintain a resource plan to be distributed to each team member; provide leadership and guidance to less

experienced team members; oversee patching processes; and coordinate disaster recovery exercises.

32. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on August 7, 2023.

33. Plaintiff alleges he became disabled on August 7, 2023.

34. Plaintiff filed for short-term disability benefits with Defendant.

35. Short-term disability benefits were granted.

36. Plaintiff filed for long-term disability benefits through the Plan administered by Defendant on August 7, 2023.

37. The Plan defines "**DISABILITY**" as follows:

DISABILITY MEANS THAT DUE TO SICKNESS OR INJURY;
1.   YOU ARE NOT ABLE TO PERFORM SOME OR ALL OF THE MATERIAL AND SUBSTANTIAL DUTIES OF YOUR REGULAR OCCUPATION AND YOU HAVE AT LEAST A 20% OF LOSS IN YOUR PRE-DISABILITY EARNINGS.
OR
2.   WHILE YOU ARE NOT ABLE TO PERFORM SOME OR ALL OF THE MATERIAL AND SUBSTANTIAL DUTIES OF YOUR REGULAR OCCUPATION, YOU ARE WORKING IN ANY OCCUPATION AND HAVE AT LEAST A 20% LOSS IN YOUR PRE-DISABILITY EARNINGS.

IF YOUR MAXIMUM PAYMENT DURATION (SHOWN IN THE PLAN HIGHLIGHTS) IS LONGER THAN 24 MONTHS:

WE WILL CONTINUE PAYMENTS TO YOU BEYOND 24 (MONTHS) IF DUE TO THE SAME SICKNESS OR INJURY:
1.   YOU ARE NOT ABLE TO PERFORM THE MATERIAL AND SUBSTANTIAL DUTIES OF ANY GAINFUL OCCUPATION.
OR
2.   WHILE YOU ARE NOT ABLE TO PERFORM SOME OR ALL OF THE MATERIAL AND SUBSTANTIAL DUTIES OF YOUR REGULAR OCCUPATION, YOU ARE WORKING IN ANY OCCUPATION AND HAVE AT LEAST A 20% LOSS IN YOUR PRE-DISABILITY EARNINGS.

*The definition of disability also presumes:*

*-- Your disability begins while you are covered under the plan;*
*-- That the loss of a professional or occupational license or certification does not,*
*by itself, mean that you are disabled;*
*-- Any occupation will include your regular occupation.*

*MATERIAL AND SUBSTANTIAL DUTIES ARE THE DUTIES THAT:*
*--ARE NORMALLY REQUIRED FOR THE PERFORMANCE OF THE OCCUPATION;*
*AND*
*--CANNOT BE REASONABLY OMITTED OR CHANGED."*

38. The Plan defines "**REGULAR OCCUPATION**" as follows:

"***REGULAR OCCUPATION***" *MEANS THE OCCUPATION, AS IT IS PERFORMED NATIONALLY, THAT YOU ARE ROUTINELY PERFORMMING WHEN YOUR DISABILITY BEGINS. YOUR REGULAR OCCUPATION DOES NOT MEAN THE JOB YOU ARE PERFORMING FOR A SPECIFIC EMPLOYER OR AT A SPECIFIC LOCATION."*

39. The Plan defines "**GAINFUL OCCUPATION**" as follows:

"***GAINFUL OCCUPATION***" *MEANS AN OCCUPATION, CONSIDERING YOUR PAST TRAINING, EDUCATION AND EXPERIENCE OR FOR WHICH YOU CAN BE TRAINED, THAT PROVIDES OR CAN BE EXPECTED TO PROVIDE YOU, WITHIN 12 MONTHS OF YOUR RETURN TO WORK, WITH AN INCOME (BEFORE TAXES) AT LEAST EQUAL TO YOUR GROSS MONTHLY PAYMENT."*

40. Long-term disability benefits were denied.

41. The Plan provides for monthly benefits of $6,262.80.

42. On February 9, 2024, Defendant denied Plaintiff's long-term disability benefits.

43. Defendant's denial letter said "[g]iven that your impairment due to hypertension and anxiety is not supported, and given that you are not physically precluded from performing the duties of your regular occupation, you do not meet the definition of Disability and your LTD claim has been denied." Defendant allowed Plaintiff 180 days to appeal the decision.

44. Defendant's denial letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of his own or any occupation related to

8

his medical conditions.

45.     Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal. On this front, Defendant's letter states only, "If you disagree with that decision and decide to request a review for the decision, please provide information and/or documents which responds to each of these reasons for the decision. Your request for review should explain why you believe each of these reasons is without merit and why this claim decision should be overturned."

46.     On July 27, 2024, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

47.     Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending a letter requesting the same to Defendant.

48.     Plaintiff submitted additional information including medical records to show he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

49.     On or about November 13, 2024, Defendant's paid consultant, Stewart Russell, DO (Dr. Russell), occupational medicine, performed a peer review of Plaintiff's claim file.

50.     There is an indication a "Lisa Libby, RN, senior clinical consultant, reviewed Plaintiff's claim file."

51.     Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

   a.     The reviewers' opinions were infected by conflict and bias;

   b.     The reviewers' findings lack foundation and are conclusory;

    c.    The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

    d.    The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

    e.    The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f.    The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

    g.    The reviewers failed to acknowledge medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

    h.    The reviewers based their opinions on summary reports of other underqualified opinions; and

    i.    The reviewers' conclusions were inconsistent with the weight of the evidence.

52.    Defendant's consultants completed their reports without examining Plaintiff.

53.    Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for long-term disability benefits.

54.    Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

55.    Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

56.    The Plan gave Defendant the right to have Plaintiff submit to a physical

examination at the appeal level.

57. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

58. More information promotes accurate claims assessment.

59. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

60. Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

61. Plaintiff suffers from multiple medical conditions resulting in both exertional and non-exertional impairments.

62. Plaintiff suffers from elevated blood pressure (hypertension); degenerative disc disease (DDD); back pain; muscle spasms; and anxiety.

63. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

64. Plaintiff's treating physicians have opined Plaintiff is unable to work.

65. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

66. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

67. Physicians have prescribed Plaintiff with multiple medications, including narcotic

pain relievers, in an effort to address his multiple symptoms.

68. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

69. Plaintiff's documented pain is so severe it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

70. Plaintiff's medications cause additional side-effects in the form of sedation and cognitive difficulties.

71. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

72. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

73. However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

74. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

75. Defendant's determination was influenced by its conflict of interest.

76. Defendant's reviewing experts are not impartial.

77. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

78. Defendant knows, or has reason to know, its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

79. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

80. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

81. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

82. Plaintiff incorporates those allegations contained in paragraphs 1 through 81 as though set forth at length herein.

83. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

   a. Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

   b. Defendant failed to afford proper weight to the evidence in the administrative record showing Plaintiff is totally disabled;

   c. Defendant's interpretation of the definition of disability contained in the policy is

contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II: ATTORNEY FEES AND COSTS

84. Plaintiff repeats and realleges the allegations of paragraphs 1 through 83 above.

85. By reason of Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding he is entitled to all past due long-term disability benefits yet unpaid;

B. Order Defendant to pay past due long-term disability benefits retroactive to January 3, 2024 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long-term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.  Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.  For such other relief as may be deemed just and proper by the Court.

s/ M. Leila Louzri
M. Leila Louzri, Esq.
Federal Bar #: 12007
**FOSTER LAW FIRM, LLC**
25 Mills Avenue
Greenville, SC 29605
(864) 242-6200
(864) 233-0290 (facsimile)
E-mail: mllouzri@fosterfoster.com

Selina Valdez
Tex. Bar No. 24121872
Fed. I.D. No. 3633062
MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
Email: selina@marcwhitehead.com

*Pending Pro Hac Vice*

Date: August 28, 2025                    Attorneys for Plaintiff